UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

District No. 1, Pacific Coast District, )
Marine Engineers' Beneficial )
Association, AFL-CIO, )
)
)
*Plaintiff*, )
)
v. ) Civil Case No. 18-1618 (RJL)
)
Liberty Maritime Corporation, )
)
*Defendant.* )

FILED
JAN 15 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MEMORANDUM OPINION
(January 14, 2019) [Dkt. # 8]

Plaintiff District No. 1, Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO ("MEBA" or "Union") brings suit against Liberty Maritime Corporation ("Liberty" or "Company") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, challenging the Company's appointment of an arbitrator to resolve disputes under the parties' labor contract. The Union seeks a declaratory judgment and related injunctive relief, including that this Court order Liberty to remove the current arbitrator and order the parties to appoint a new arbitrator. *See* Complaint [Dkt. # 1] ("Compl.") ¶¶ 70–78. Before this Court is Liberty's Motion to Dismiss for failure to state a claim. *See* Def.'s Motion to Dismiss [Dkt. # 8] ("Def.'s Mot."). For the following reasons, the defendant's motion [Dkt. # 8] is GRANTED.

1

## BACKGROUND

Plaintiff MEBA is a labor union that represents employees in the United States maritime industry. Compl. ¶ 6. Liberty is a commercial shipping company that employs individuals represented by the Union on several of its seagoing vessels. Compl. ¶ 7. The dispute here grows out of the 30-year-old collective bargaining agreement (hereinafter "agreement" or "labor contract") between the Union and Liberty, which has been the source of numerous disputes before this court and others.[1] Compl. ¶¶ 12, 14 (referencing Liberty's 1988 signature to the Union's 1986-1990 Tanker Vessels Master Agreement and the 1986-1990 Dry Cargo Vessels Master Agreement).

Under Section 2 of the labor contract, titled "Grievance Procedure and Arbitration," "[a]ll disputes relating to the interpretation or performance of [the] Agreement shall be determined in accordance with the provisions of this Section." Compl. ¶ 13 (citing ECF No. 1-1, at Section 2(a), p. 19; ECF No. 1-2, at Section 2(a), p. 18).[2] The agreement then lays out specific procedures for adjudicating grievances:

---

[1] *See District No. 1, Pacific Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 815 F.3d 834 (D.C. Cir. 2016) (affirming district court's ruling that dispute fell within scope of collective bargaining agreement's arbitration clause); *District No. 1, Pacific Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 330 F. Supp. 3d 363 (D.D.C. 2018) (dispute fell within scope of collective bargaining agreement's arbitration clause); *District No. 1, Pacific Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 330 F. Supp. 3d 451 (D.D.C. 2018) (dispute fell within scope of collective bargaining agreement's arbitration clause).

[2] Because several of the exhibits attached to the Complaint contain more than one document, all exhibit citations are to the page numbers of the PDF.

Selection of the Licensed Personnel Board: "There shall be a Licensed Personnel Board consisting of two (2) persons appointed by the Union and two (2) persons appointed by the Company," which shall "resolve[] any grievance either by majority vote or by mutual agreement." ECF No. 1-1, at Section 2(b), p. 19; ECF No. 1-2, at Section 2(b), p. 19. In the event that the four-member Licensed Personnel Board (hereinafter "LPB") cannot resolve the grievance by mutual assent or a majority vote, a designated Arbitrator, acting as LPB Chair, is authorized to render a binding decision. *Id.*

Appointment of Arbitrator: "The Arbitrator will be appointed by mutual agreement for a one (1) year period, renewable for one (1) year periods by mutual consent." ECF No. 1-1, at Section 2(d), p. 20; ECF No. 1-2, at Section 2(d), p. 19.

Monthly Meetings of LPB Board: "A fixed date in each calendar month…shall be designated for the meeting of the Licensed Personnel Board with respect to any grievances that each party may have. The Company and the Union agree that in order to properly have a grievance submitted to the Licensed Personnel Board at its regular monthly meeting, at least a five (5) days' notice in writing must be given to the other party, setting forth the nature of the grievance and the relief requested, unless such time limitation is waived." ECF No. 1-1, at Section 2(e), p. 20; ECF No. 1-2, at Section 2(e), p. 19–20.

Special Meetings of LPB Board: "Either party may, in addition to such fixed meetings, have the right, by telegraphic notice to the other party and to the Arbitrator, to request a convening of the Licensed Personnel Board to consider a grievance, the nature of which requires immediate disposition. In such event, the Board shall meet as expeditiously

3

as possible, but in no event later than twenty-four (24) hours after receipt of said notice." ECF No. 1-1, at Section 2(f), p. 21; ECF No. 1-2, at Section 2(f), p. 20.

Another contractual provision is also relevant here. The Supplemental Memorandum of Understanding ("Supplemental MOU"), expressly incorporated into the parties' agreement, *see* Compl. ¶¶ 14–15, states that the arbitrator shall be designated by either "the United States Secretary of Labor or the American Arbitration Association." ECF No.1-1, at pp. 123–24, ECF No. 1-2, at pp. 140–41.

The Union submitted "a number of grievances under the parties' labor contract" in April 2018, alleging "contract violations the Union alleged were committed by Liberty concerning the manning of its vessels, among other things." Compl. ¶ 16. After the parties failed to resolve the grievances, *see* Compl. ¶ 18, Liberty moved for implementation of the grievance procedure provided for in Section 2 of the agreement on June 12, 2018, to initiate the process of appointing a LPB to hear the parties' contractual disputes. *See* ECF No. 1-10, at p. 2. Liberty named its two LPB members and suggested a meeting date of June 18, 2018. Compl. ¶ 23.

That is when communications between the parties broke down. In response to Liberty's request, the Union rejected the proposed June 18 meeting date and opposed the use of what it called "defunct" LPB procedures, insisting that the parties instead "follow[] the practice of seeking an arbitrator" outside of the labor agreement. ECF No. 1-11, at p. 2.[3] After several communications back and forth, Liberty proposed a new meeting date of

---

[3] Nevertheless, the Union eventually appointed its two LPB members on June 20, 2018. ECF No. 1-17, at p. 2.

4

June 26, 2018, ECF No. 1-14, at p. 2, but the Union rejected that date as well on the grounds that the Union's legal counsel was going to be out of town. Compl. ¶¶ 34–36. Liberty notified the Union of its intention to go forward with the meeting nonetheless, stating that there was "[n]o provision" in the parties' labor contract "for counsel to be present during the LPB's internal deliberations or to advise the LPB when it undertakes its deliberations." ECF No. 1-18, at p. 2. The meeting took place on June 26, 2018, without any Union representatives in attendance. Compl. ¶ 59. After the meeting, Liberty notified the Union that the Company's two LPB members had voted to appoint an arbitrator. Compl. ¶¶ 63–64. The Union strongly objected to the arbitrator's appointment, arguing that "he had no authority to act as the arbitrator of the parties LPB because he had not been mutually appoint[ed]." Compl. ¶ 65.

On July 9, 2018, the Union filed suit in this Court seeking declaratory and injunctive relief, asking me to both enjoin any arbitration from proceeding under the appointed arbitrator and to also compel Liberty to participate in the selection of a new arbitrator. *See generally* Compl. The Union argues that it is entitled to such relief as a matter of law based on the terms of the collective bargaining agreement. Compl. ¶¶ 70–78. Namely, the Union maintains that because Liberty failed to follow the grievance procedures in Section 2 of the parties' labor contract, the arbitrator's appointment is invalid and he has no authority to resolve their contractual disputes. Compl. ¶¶ 70–75. On July 18, 2018, Liberty filed a motion to dismiss the Union's complaint, arguing that the agreement's arbitration provisions govern this procedural dispute over the appointment of the arbitrator, and that

5

parties' compliance with any of the grievance procedures in the agreement is a matter for the arbitrator, not the court, to decide. Def.'s Mot. at 1–2.

## STANDARD OF REVIEW

As an initial matter, I must consider whether Liberty's motion to dismiss based on the existence of arbitration procedures is more properly cast as a motion to compel arbitration. Courts have considered this issue in the context of whether a district court's denial of a motion to dismiss based on an arbitration clause was appealable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1), even if the motion was styled as a motion to dismiss rather than a motion to compel arbitration. "[C]ourts are divided as to whether a request to dismiss a case based on an arbitration clause should be treated as a request for an order compelling arbitration." *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 5 (1st Cir. 2004). Most courts agree, however, that the inquiry should be heavily fact-dependent on the type of relief sought.[4]

In *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, our Circuit declined to convert a motion to dismiss into a motion to compel arbitration because there was no evidence of

---

[4] *See, e.g., Western Sec. Bank v. Schneider Ltd. Partnership*, 816 F.3d 587, 589–90 (9th Cir. 2016) (adopting the fact-based inquiry used by other circuits to determine whether a motion to dismiss was converted to motion to compel arbitration); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) ("we must determine whether [defendant] made it clear within the four corners of its motion to dismiss that it was seeking enforcement of the arbitration agreement"); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1385 (10th Cir. 2009) ("the court should look to the relief requested in the motion"); *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 139–40 (2d Cir. 2008) (espousing the fact-based approach); *Fit Tech, Inc.*, 374 F.3d at 6 (treating a motion to dismiss as a motion to compel arbitration where the movant "clearly argued to the district court" that the alternative dispute forum "had sole authority to resolve *all* issues") (emphasis in original).

parties' "intent to pursue arbitration." 333 F.3d 250, 254 (D.C. Cir. 2003). Unlike *Bombardier*, I find that, based on the record, the parties' intent here is clearly "to pursue arbitration." *Id.* Although both Liberty and the Union have refrained from styling their respective requests for relief as motions to compel arbitration, both ultimately seek to return to the alternative dispute resolution forum. *See* Def.'s Mot. at 9–10 ("[t]he arbitration clause here is sufficiently broad to encompass the parties' pending contract grievances each concerning alleged violations of the Labor Agreement" as well as "purely procedural issues 'relating to the interpretation or performance of [the] Agreement'") (internal citation omitted); Compl. ¶ 78 (requesting that Liberty "be enjoined and directed to participate in the mutual selection of an arbitrator as required by Section 2 of the parties' labor contract"). Not to mention the labor contract itself evinces a strong inclination to arbitrate "[a]ll disputes relating to the interpretation or performance of [the] Agreement." Compl. ¶ 13. Thus, I find it is appropriate to consider Liberty's motion to dismiss as a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, reflects "the fundamental principle that arbitration is a matter of contract," *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 333 (2011) (internal quotation marks and citation omitted), and "strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479–80 (1989) (internal quotation marks omitted). Accordingly, the Supreme Court has directed that "district courts *shall* direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has been signed," *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3–4), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Pearce v. E.F. Hutton Grp.*, 828 F.2d 826, 829 (D.C. Cir. 1987). Moreover, "a court may not weigh the merits of a grievance when determining whether to compel arbitration," *Trans World Airlines, Inc. v. Air Line Pilots Ass'n*, 172 F.3d 921, 921 (D.C. Cir. 1998) (per curiam), but must instead focus on whether the parties have agreed to arbitrate the underlying matters at issue.

Not surprisingly, our Circuit Court has directed courts to consider a motion to compel arbitration as a request for summary adjudication subject to the summary judgment standard of Federal Rule of Civil Procedure 56(c). *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008). It follows that, as with summary judgment, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 81 (2000); *see also Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration."). Courts must draw all inferences in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), to determine "whether he would be relieved of his contractual obligation to arbitrate if his allegations

8

proved to be true." *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992).

The parties here ultimately disagree on a point of law—whether a procedural question about the selection of the arbitrator is for the arbitrator to decide or for the court. This, of course, is precisely the type of question which lends itself to summary resolution. *See Tower Ins. Co. of N.Y.*, 967 F. Supp. 2d 72, 78 (D.D.C. 2013) ("[t]he proper interpretation of an unambiguous contract provision is a question of law, and thus is well-suited to disposition by summary judgment"). I thus apply the summary judgment standard to evaluate whether, taking all inferences favorable to the Union, the question of arbitrability must be resolved by the arbitrator under the parties' agreement.

## ANALYSIS

Although the facts underlying the parties' substantive contractual disputes are complex, the issue before me is quite simple: is the arbitration agreement broad enough as to cover disputes regarding the appointment of the arbitrator himself? If so, then under the FAA, I must dismiss the Complaint and refer the parties to arbitration.

The Supreme Court has clearly laid out that "procedural disagreements," including "[d]oubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate," are questions that "cannot ordinarily be answered without considerations of the merits of the dispute which is presented for arbitration." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1964). Indeed, the "[r]eservation of 'procedural' issues for the courts would thus not only create the difficult

9

task of separating related issues, but would also produce frequent duplication of effort." *Id.* at 558; *see also Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO*, 746 F.2d 1503, 1505 (D.C. Cir. 1984) (finding that where a party "failed to comply with procedural requirements," "[i]t is well-settled that the effect of such failures is for an arbitrator to decide").

Liberty argues that all procedural matters, including "the LPB's alleged failure to follow certain steps while appointing the LPB Chair/Arbitrator—are exclusively for an arbitrator to resolve, not a court." Def.'s Mot. at 2. That is so because the parties' labor contract empowers the arbitrator to resolve "any grievance arising out of the labor agreement," including "challenges to his authority pursuant to the parties' labor agreement." *Id.* As further evidence of parties' intent to reserve procedural questions for the arbitrator, Liberty points to the agreement's "express incorporat[ion]" of AAA rules in the Supplemental MOU. Def.'s Mot. at 4 (citing ECF No. 1-1, at pp. 123–24; ECF No. 1-2, at pp. 140–41) (delegating selection of the arbitrator to either "the United States Secretary of Labor or the American Arbitration Association"). Those AAA rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction." Def.'s Mot. at 4.

In response, the Union raises a fox-guarding-the-henhouse argument, contending that the arbitrator cannot have the authority to determine the legitimacy of his own designation as arbitrator even if he is empowered to hear other procedural disputes. *See* Pl.'s Opp. to Mot. to Dismiss [Dkt. # 12] ("Pl.'s Mot.") at 22. Instead, plaintiff argues, "[t]he legitimacy of an arbitrator is a threshold question that must be established before the

10

scope of arbitration or the arbitrability of a dispute can even be addressed." *Id.* (emphasis omitted).

Turning first to the inherent breadth of the arbitration provisions at issue. The Supreme Court and lower courts have consistently interpreted the pro-arbitration principle in the FAA to mean that where the arbitration clause is broad, an arbitrator can resolve any questions about "whether [grievance] procedures have been followed or excused." *John Wiley*, 376 U.S. at 557. In one of the numerous prior disputes involving this very same labor contract, our Circuit characterized "the arbitration clause" in the parties' agreement as "quite broad." *MEBA v. Liberty*, 815 F.3d at 846. And in this context, it certainly is as well. The agreement spells out in great detail the procedures for resolving grievances between the Union and the Company and reserves authority to the arbitrator for "[a]ll disputes relating to the interpretation or performance of this Agreement." Compl. ¶ 13.[5]

The agreement is broader still when one considers that the parties have explicitly incorporated the AAA rules into their Supplemental MOU, which is itself incorporated by reference into the labor contract. *See Sakyi v. Estee Lauder*, 308 F. Supp. 3d 366, 378 (D.D.C. 2018) (finding that the parties "must arbitrate gateway questions for a second, independent reason: the Arbitration Agreement incorporates the rules of the [AAA]…which state[] that the arbitrator shall have the power to rule on his or her own jurisdiction") (internal citation omitted). Just as the Union has raised no issues with the

---

[5] Notably, plaintiff disputes neither the arbitrability of the underlying substantive disputes nor the validity of the arbitration agreement itself. *See* Compl. ¶ 13; Pl.'s Mot. at 19 (acknowledging that the parties' labor contract contemplated the appointment of an arbitrator).

11

validity of the agreement, it has raised no dispute that the parties did intend to incorporate the AAA rules into their agreement through the Supplemental MOU. In fact, the Union's preferred resolution of the substantive grievances in this case would have apparently involved bypassing the LPB process altogether and going straight to the AAA to request a panel of labor arbitrators that qualified under AAA standards. *See* Compl. ¶ 26; Pl.'s Mot. at 4.

The Union tries to get around this by arguing that this Court must resolve this "threshold" issue of the appointment of the arbitrator before reaching any issues of arbitrability. Pl.'s Mot. at 22. But plaintiff cannot request that the AAA standards be applied to the arbitrator's qualifications to serve as an arbitrator, but not to questions on the scope of the arbitrator's authority. Pl.'s Mot. at 21–22. In short, the Union wants to have its cake and eat it, too. And while our Circuit has yet to address this particular issue, other judges on this Court have repeatedly held that parties' "incorporation of the AAA Rules by reference" in their arbitration agreements "constitutes clear and unmistakable evidence that the parties intended to submit the arbitrability determination to the arbitrator" himself. *Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 54–55 (D.D.C. 2008); *see also Sakyi v. Estee Lauder*, 308 F. Supp. 3d at 377 (same); *Haire v. Smith, Currie, & Hancock LLP*, 925 F. Supp. 2d 126, 133 (D.D.C. 2013) (same). Thus, where, as here, the parties' agreement expressly addresses the issue of how the arbitrator is appointed and adopts AAA rules allowing the arbitrator to be the judge of his own authority, Courts shall not enter!

Finally, as the arbitrator must determine the arbitrability of the defendant's claims, the only matter left for me to consider is whether the suit should be dismissed or stayed

pending the outcome of the arbitration. However, because there are no issues left for this court to resolve, I easily conclude that "it is appropriate to dismiss this case in its entirety."[6] *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.,* Civ. No. 05-151 (GK), 2006 WL 1793295, at *3 (D.D.C. June 28, 2006) *aff'd,* 531 F.3d 863 (D.C. Cir. 2008) ("[A]ll of Plaintiff's claims must be submitted to arbitration, since the arbitration clause applies to *any* dispute that may arise between the parties."); *see also* Richard A. Bales & Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay?,* 115 Penn St. L. Rev. at 542 ("If all issues between the parties fall within the arbitration provision, the court should, in its discretion, dismiss the action and leave the parties to the decision of the arbitrator, pursuant to the parties' contractual agreement.").

## CONCLUSION

For the reasons outlined above, I find that the issue of the arbitrator's appointment is a procedural question for the arbitrator, not the court, to decide. Thus, for all of the reasons outlined in this Opinion, defendant's Motion to Dismiss [Dkt. # 8] is GRANTED, the Complaint [Dkt. # 1] is DISMISSED without prejudice, and the parties are referred to arbitration.

RICHARD J. LEON
United States District Judge

---

[6] While there is currently no guidance from our Circuit on this issue, "[t]he majority of circuits to address this question have held that dismissal is appropriate if all of the claims raised in the action are subject to arbitration." *Sakyi v. Estee Lauder*, 308 F. Supp. 3d at 388.